### United States District Court
### for the Northern District of Illinois
### Eastern Division

| | | |
|---|---|---|
| Stericycle, Inc., | ) | No. 12 C 9130 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Judge Thomas M. Durkin |
| | ) | |
| Thomas Carney, | ) | |
| | ) | |
| Defendant. | ) | |

### Memorandum Opinion and Order

Stericycle, Inc. ("Stericycle") brings this suit against Thomas Carney alleging that he breached certain employment agreements after he left Stericycle to work for a competitor, Phillips Services Company, Inc. ("PSC"). Presently before the Court is Carney's motion to dismiss under Fed. R. Civ. P. 12(b)(6) and 12(b)(3). R. 14. For the reasons explained below, Carney's Rule 12(b)(6) motion is granted. Counts I and II are dismissed with prejudice. Counts III, IV, and V are dismissed without prejudice. Carney's Rule 12(b)(3) motion is denied as moot.

### Background[1]

Stericycle offers a variety of waste management services. Stericycle collects, treats, and disposes of medical waste, hazardous waste, and other regulated waste. Stericycle services customers of all sizes and across multiple industries, including

---

[1] The following background is taken from (i) the well-pled allegations in Stericycle's complaint (which the Court accepts as true on a motion to dismiss) and (ii) the documents attached to Stericycle's complaint. R. 1. All exhibit citations throughout this order are to the documents attached to Stericycle's complaint.

pharmaceutical companies, hospitals, medical and dental offices, laboratories, manufacturers and other industrial companies, and retail stores.

Carney worked for Stericycle or a predecessor from February 2007 through October 2011. This case involves two sets of employment agreements: one set between Carney and Stericycle, and an earlier set between Carney and Strong Environmental, Inc. ("SEI") before SEI was acquired by Stericycle in January 2009. Stericycle asserts claims against Carney under both sets of agreements.

**SEI Agreements**

Carney began working for SEI in February 2007, initially as an independent contractor. On May 23, 2007, he became an employee of SEI and executed an "Employment Covenants Agreement." Ex. B. He executed another employment agreement with SEI on December 31, 2008. Ex. C. The relevant terms of the May 23, 2007 and December 31, 2008 agreements are identical; the Court will refer to them collectively as the "SEI Agreements."

The SEI Agreements include non-disclosure and non-solicitation covenants. With respect to non-disclosure, the SEI Agreements provide:

> I will not disclose any of the Company's Confidential Information . . . to others outside the Company or use or reverse engineer the same for any purposes (other than in the performance of my duties as an employee of the Company) without the prior written approval of the Company.
>
> \* \* \*
>
> The obligations under this Agreement shall . . . with regard to the Confidential Information, remain in effect for two (2) years.

2

Ex. B ¶ 2; Ex. C ¶ 2. With respect to non-solicitation, the SEI Agreements provide:

> During the period of my employment by the Company and for a period of two (2) years following the date of my employment termination with the Company, I will not directly or indirectly . . . solicit, divert or take away, or attempt to divert or take away, the business or patronage of any of the clients, customers or accounts, or prospective clients, customers or accounts, of the Company for the purpose of providing any goods or services competitive with the Business. The restrictions set forth in this paragraph . . . apply only to Customers with whom I have had Contact.

Ex. B ¶ 7; Ex. C ¶ 7. The SEI Agreements also state that they "inure to the benefit of[] the Company's successors and assigns, including, without limitation, successors through . . . sale of a majority of the Company's stock." Ex. B ¶ 13; Ex. C ¶ 13.

**Stericycle Agreements**

In early January 2009, Stericycle acquired SEI. At that point, Carney became a Stericycle employee.[2] On January 8, 2009, Stericycle sent Carney an offer letter explaining the conditions of his employment with Stericycle and related benefits. Ex. D. Carney signed the offer letter the next day. He also signed a "Confidentiality, Nonsolicitation and Noncompetition Agreement" in exchange for an option to purchase shares of Stericycle common stock. Ex. E. On February 10, 2009, Carney signed another "Confidentiality, Nonsolicitation and Noncompetition Agreement" in exchange for additional stock options. Ex. F. And on February 8, 2011, Carney

---

[2] Stericycle acquired SEI through a stock purchase. Stericycle's complaint does not explain what became of SEI after the acquisition or whether SEI still exists as a separate entity. But Stericycle does not allege that Carney continued to work for SEI after the acquisition. To the contrary, Stericycle alleges that Carney became a Stericycle employee and worked for Stericycle. Compl. ¶¶ 26-38.

signed an "Employee Covenant Agreement" in exchange for still more stock options. Ex. G. The relevant terms of the January 9, 2009, February 10, 2009, and February 8, 2011 agreements are largely the same; the Court will refer to them collectively as the "Stericycle Agreements."[3]

The Stericycle Agreements include non-disclosure, non-solicitation, and non-competition covenants. With respect to non-disclosure, the Stericycle Agreements provide:

> During Employee's Employment and continuing indefinitely following the termination of Employee's Employment, . . . Employee shall treat all Confidential Information as secret and confidential. . . .
>
> Employee shall not under any circumstances directly or indirectly (i) disclose any Confidential Information to a third party (except as required in the normal course of Employee's duties or by court order or as expressly authorized by [certain Stericycle management]) or (ii) use any Confidential Information for Employee's own account.

Ex. E ¶ 2; Ex. F ¶ 2; Ex. G ¶ 2.

With respect to non-solicitation, the Stericycle Agreements provide:

> [F]or a period of 12 months beginning on the date of termination of Employee's Employment and ending on the first anniversary of that date (the "Nonsolicitation Period"), . . . Employee shall not directly or indirectly do the following (Employee's "Nonsolicitation Obligation"):
>
> (a)    solicit or attempt to solicit for a Competing Business any customer or account of Stericycle that Employee had dealings with or supervisory responsibility

---

[3] In a few instances, the February 8, 2011 agreement reordered or slightly altered some of the language cited below. With one exception noted in footnote 4, none of the changes appear material to this case. For simplicity, the Court will not separately quote each provision from the February 8, 2011 agreement.

for, or had access to Confidential Information relating to, during the 12 months ending on the date of termination of Employee's Employment. . . .

\*       \*       \*

The duration of the Nonsolicitation Period shall be extended for any period of violation by Employee of Employee's Nonsolicitation Obligation and for any period of litigation that Stericycle institutes to enforce Employee's Nonsolicitation Obligation.

Ex. E ¶ 3; Ex. F ¶ 3; Ex. G ¶ 3.

With respect to non-competition, the Stericycle Agreements provide:

For a period of 12 months beginning on the date of termination of Employee's Employment and ending on the first anniversary of that date (the "Noncompetition Period"), . . . Employee shall not directly or indirectly engage in, accept employment with, or have a financial or other material business interest in any Competing Business (Employee's "Noncompetition Obligation").

The duration of the Noncompetition Period shall be extended for any period of violation by Employee of Employee's Noncompetition Obligation and for any period of litigation that Stericycle institutes to enforce Employee's Noncompetition Obligation.

Ex. E ¶ 4; Ex. F ¶ 4; Ex. G ¶ 4. They further provide that:

Employee shall not be considered in breach of the Employee's Non-Competition Obligation if . . . the services that Employee provides as an employee of or consultant to a Competing Business are not the same or substantially similar in nature to the services that Employee provided to Stericycle during the 12 months ending on the date of termination of Employee's Employment.

Ex. E ¶ 5; Ex. F ¶ 5; Ex. G ¶ 5.  "Competing Business" means "a Business that

engages in the same or substantially the same business as a Covered Business from

or at any location in the Restricted Area"; "Restricted Area" means "anywhere within a radius of 100 miles of any customer that Employee had dealings with or supervisory responsibility for, or had access to Confidential Information relating to, during the 12 months ending on the date of termination of Employee's Employment." Ex. E, Definitions; Ex. F, Definitions; Ex. G, Definitions.[4]

**Carney's Move From Stericycle To PSC**

When Stericycle initially acquired SEI, SEI had a "StrongPak" business that became one of three units within Stericycle's "ExpertSustainability Group" ("ESG"): (i) brokered industrial services; (ii) StrongPak; and (iii) finished industrial goods. Carney served as Director of Stericycle's StrongPak unit, including during the final 12 months of his employment with Stericycle. The StrongPak unit services retail customers, including supermarkets, convenience stores, pharmacies, home improvement stores, and "big box" chains. Although Stericycle's ESG business was split into three units—the other two serving industrial customers—Carney was still privy to information concerning all three units through monthly meetings with business and operations managers within the ESG.

In late September 2011, Carney tendered his resignation from Stericycle effective October 7, 2011. Unbeknownst to Stericycle, Carney accepted a job with PSC, a competitor of Stericycle's ESG business. Carney began working for PSC on or about October 31, 2011. Carney's initial position at PSC was Director of

---

[4] In the definition of "Restricted Area," the February 8, 2011 agreement changes "12 months" to "two-year period."

Industrial Services. On October 8, 2012—exactly one year and a day after he left Stericycle—PSC named Carney its Director of Retail Services.

## Standard of Review

A Rule 12(b)(6) motion challenges the sufficiency of the complaint. *See, e.g., Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under notice pleading standards, a complaint "must be enough to raise a right to relief above the speculative level," *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007), and "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "In evaluating the sufficiency of the complaint, [courts] view it in the light most favorable to the plaintiff, taking as true all well-pleaded factual allegations and making all possible inferences from the allegations in the plaintiff's favor." *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). Courts also "consider documents attached to the complaint as part of the complaint itself." *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010).

## Analysis

## I.  SEI Agreements

In Counts I and II of its complaint, Stericycle alleges that Carney breached the SEI Agreements by (i) "accepting employment in a similar capacity to the position he held with Stericycle with PSC, a competing company, during the two-

year non-competition period" and (ii) "by disclosing Stericycle confidential information to PSC." Compl. ¶¶ 52-53, 59-60.[5] In his motion to dismiss, Carney argues that Stericycle lacks standing to enforce the SEI Agreements and that the SEI Agreements were superseded by the Stericycle Agreements.

Stericycle does appear to have standing to enforce the SEI Agreements. The SEI Agreements state that they "inure to the benefit of[] the Company's successors and assigns, including, without limitation, successors through . . . sale of a majority of the Company's stock." Ex. B ¶ 13; Ex. C ¶ 13. There is no dispute that Stericycle bought the majority (and apparently all) of SEI's stock. As a result, Stericycle can maintain a lawsuit against Carney to enforce whatever rights and obligations may exist under the SEI Agreements.

The real issue is whether anything remains of the SEI Agreements. The parties each frame this issue as whether the Stericycle Agreements superseded the SEI Agreements. As a general matter, "[a] complete, valid, written contract merges and supersedes all prior and contemporaneous negotiations and agreements dealing with the same subject matter." *Courtois v. Millard*, 529 N.E.2d 77, 79 (Ill. App. Ct. 1988); *see also Dolezal v. Plastic & Reconstructive Surgery, S.C.*, 640 N.E.2d 1359, 1366 (Ill. App. Ct. 1994) (same). Under Stericycle's broad reading of the SEI Agreements in Counts I and II, the SEI and Stericycle Agreements certainly address the same subject matter, create inconsistent obligations, and could not have

---

[5] Although Counts I and II refer to a "non-competition period," the SEI Agreements only prohibit solicitation of SEI customers. The SEI Agreements do not otherwise prohibit Carney from going to work for a competitor.

all been intended to govern Carney's ongoing employment with Stericycle. *E.g., Oce N. Am., Inc. v. Brazeau*, 2010 WL 5033310, at *2 (N.D. Ill. Mar. 18, 2010) ("The 2005 and 2007 [non-disclosure and non-competition] agreements both address defendant's post-employment obligations, but they do so differently. . . . Because the two agreements address the same subject matter, the 2007 agreement supersedes the 2005 agreement as a matter of law.").

But there is a more fundamental problem. Even on the face of the SEI Agreements, Stericycle does not have a plausible claim that Carney breached his obligations. This is not just an issue of one contract superseding another. Stericycle has no claim under the SEI Agreements in the first place.[6]

The Court looks to the unambiguous language of the SEI Agreements, which must be given its plain and ordinary meaning. *Harmon v. Gordon*, 712 F.3d 1044, 1050 (7th Cir. 2013). Carney's non-solicitation covenant in the SEI Agreements only survives for a limited time: "the period of [Carney's] employment with the Company and for a period of two (2) years following the date of [Carney's] employment

---

[6] As the parties note, the SEI Agreements contain a Georgia choice of law clause. But neither party suggests that there is any difference between Georgia and Illinois law here. "A choice of law determination is required only when a difference in law will make a difference in the outcome." *Townsend v. Sears, Roebuck & Co.*, 879 N.E.2d 893, 898 (Ill. 2007); *see also Wachovia Sec., LLC v. Banco Panamerico, Inc.*, 674 F.3d 743, 751 n.4 (7th Cir. 2012). The SEI Agreements also contain a Georgia forum selection clause. Ex. B ¶ 14; Ex. C ¶ 14. Nonetheless, Stericycle elected to file its claims in this Court and argues that the clause is not mandatory. Mandatory or not, a plaintiff generally waives the right to enforce a forum selection clause by filing a claim in a court different than the court mandated by the forum selection clause. *McCoy v. Gamesa Tech. Corp.*, 2012 WL 245162, at *2 (N.D. Ill. Jan. 26, 2012). The Court therefore deems Stericycle's actions and arguments as waiving any objection to this Court interpreting the SEI Agreements.

termination with the Company." Ex. B ¶ 7; Ex. C. ¶ 7. The SEI Agreements define the "Company" as SEI itself. Ex. B p. 1; Ex. C p. 1. Carney's non-disclosure covenant also only survives for two years. Ex. B ¶ 2, Ex. C ¶ 2.

According to Stericycle's own complaint, Carney's employment with SEI ended in January 2009. At that point, Stericycle expressly alleges that Carney "bec[a]me[] a Stericycle employee." Compl. ¶¶ 26-38.[7] When Carney subsequently left Stericycle for PSC in October 2011, more than two years had already passed. Carney's actions at PSC therefore could not have breached his non-disclosure or non-solicitation obligations under the SEI Agreements.

The only way Carney could have breached these obligations at PSC is if the Court were to construe Carney's time at Stericycle as part of his SEI employment, thereby delaying the "termination" of his SEI employment. But that would ignore Stericycle's own complaint and its January 8, 2009 offer letter, both of which make clear that Carney was employed by Stericycle, not SEI, beginning in January 2009. Tellingly, Stericycle's October 5, 2012 demand letter to Carney references his October 7, 2011 termination from *Stericycle*, not SEI, and never mentions the SEI

---

[7] In response to Carney's motion to dismiss, Stericycle attempts to soften its own allegations by now suggesting that Carney merely "consented to being paid his wages and benefits by Stericycle." R. 25 at 12. But even if Stericycle had not already alleged that Carney became its employee, its January 8, 2009 offer letter makes that clear. Ex. D. The letter states that "Effective January 2, 2009, you will be part of the Stericycle team and your current annual salary and job responsibilities will remain the same. Your credited service date will be 01/02/08. . . . Your employment relationship with Stericycle will be an 'at will' relationship. . . ." *Id.* at pp. 1-2. The letter further explained that going forward, Carney would begin to accrue vacation time under the Stericycle vacation policy, and that "[a]ny earned, unused Vacation time with [SEI] will be paid out to you by [SEI]." *Id.* at p. 1.

Agreements at all. Ex. H at p. 1. Carney's employment at Stericycle, of course, is already governed by the Stericycle Agreements, the first of which was executed the same day Carney returned the offer letter. There is simply no basis to delay the "termination" of Carney's SEI employment past January 2009.

In short, although Stericycle has standing, it has no plausible claim that Carney breached the SEI Agreements after he left for PSC in October 2011. By that time, even if the SEI Agreements were not superseded, the non-disclosure and non-solicitation covenants had already expired. Counts I and II are dismissed with prejudice. Carney's alternative Rule 12(b)(3) motion objecting to Stericycle filing these claims in Illinois instead of Georgia is denied as moot.

## II.     Stericycle Agreements

In Counts III and IV of its complaint, Stericycle alleges that Carney breached the Stericycle Agreements (i) "by accepting employment with PSC, a direct competitor of Stericycle, in a substantially similar position to which he held at Stericycle during the one-year noncompetition period" and (ii) "by disclosing Stericycle's confidential information to PSC and using such information on behalf of himself and PSC." Compl. ¶¶ 66-67, 74-75. In his motion to dismiss, Carney argues that Stericycle has not adequately alleged that he breached the Stericycle Agreements and that the Agreements' non-solicitation and non-competition covenants are overbroad and unenforceable as a matter of law.

The elements of a breach of contract claim are "(1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of contract by

the defendant; and (4) resultant injury to the plaintiff." *Henderson-Smith & Assocs.,
Inc. v. Nahamani Family Serv. Ctr., Inc.*, 752 N.E.2d 33, 43 (Ill. App. Ct. 2001). The
Court agrees that Stericycle has not adequately alleged that Carney breached the
non-disclosure, non-solicitation, and non-competition covenants in the Stericycle
Agreements. The Court will address each covenant in turn.

First, the Stericycle Agreements provide that Carney "shall not under any
circumstances directly or indirectly (i) disclose any Confidential Information to a
third party . . . or (ii) use any Confidential Information for Employee's own account."
Unlike the SEI Agreements, the non-disclosure covenant in the Stericycle
Agreements "continu[es] indefinitely." Ex. E ¶ 2; Ex. F ¶ 2; Ex. G ¶ 2.

In its complaint, Stericycle alleges only that "[u]pon information and belief,
since becoming employed with PSC, Carney has been using Stericycle's confidential
information to advise PSC concerning Stericycle's ESG business in order to assist
and bolster PSC in its efforts to compete with Stericycle for that business." Compl. ¶
44. Although *Iqbal* and *Twombly* do not prohibit pleading on "information and
belief," *Simonian v. Blistex, Inc.*, 2010 WL 4539450, at *3 (N.D. Ill. Nov. 3, 2010),
"[t]hreadbare recitals of the elements of a cause of action, supported by mere
conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Stericycle's complaint
does not set forth sufficient (indeed, any) facts to plausibly suggest that Carney
breached his non-disclosure obligations. Some of this information may be outside
Stericycle's control. But at the same time, Stericycle cannot file a lawsuit without
having a good faith basis for believing that Carney actually breached his

contractual obligations. If Stericycle has some basis to support its conclusory allegation that Carney shared confidential information with PSC, it is incumbent on Stericycle to include at least some factual allegations in its complaint.

Second, for a period of 12 months after he left Stericycle, the Stericycle Agreements prohibit Carney from "solicit[ing] or attempt[ing] to solicit for a Competing Business any customer or account of Stericycle that [Carney] had dealings with or supervisory responsibility for, or had access to Confidential Information relating to, during the 12 months ending on the date of termination of [Carney's] employment." Ex. E ¶ 3; Ex. F ¶ 3; Ex. G ¶ 3.

This may be an oversight, but Stericycle's complaint does not say a word about any alleged breach of Carney's non-solicitation obligations (even in conclusory terms). Counts III and IV only allege violations of Carney's non-disclosure and non-competition obligations. Compl. ¶¶ 66-67, 74-75. As with non-disclosure, Stericycle therefore has not alleged sufficient facts to plausibly suggest that Carney breached the non-solicitation covenant in the Stericycle Agreements.

Third, for a period of 12 months after he left Stericycle, the Stericycle Agreements prohibit Carney from "directly or indirectly engag[ing] in, accept[ing] employment with, or hav[ing] a financial or other material business interest in any Competing Business." Ex. E ¶ 4; Ex. F ¶ 4; Ex. G ¶ 4. There is an exception: Carney is allowed to work for a "Competing Business" within those first 12 months if "the services that [Carney] provides as an employee or consultant to a Competing Business are not the same or substantially similar in nature to the services that

13

[Carney] provided to Stericycle during the 12 months ending on the date of termination of [Carney's] Employment." Ex. E ¶ 5; Ex. F ¶ 5; Ex. G ¶ 5.

In its complaint, Stericycle alleges that "PSC hired [Carney] to serve as its Director of Industrial Services, a substantially similar position to the position he held with Stericycle, to develop, market and sell products and services substantially similar to the products and services that he offered and sold on behalf of Stericycle." Compl. ¶ 41. *See also id.* ¶¶ 66, 74. But it is not apparent from the complaint how Carney's position as Director of Industrial Services for PSC was substantially similar to his prior position as Director of Stericycle's StrongPak retail unit. Although titles are not necessarily controlling, Stericycle's conclusory allegation that the positions were substantially similar is not enough to suggest that it has a plausible claim that Carney breached the non-competition covenant. Indeed, the fact that PSC waited exactly one year to name Carney its Director of Retail Services seems to suggest that PSC and Carney were well aware of the non-competition covenant in the Stericycle Agreements and did not believe that the Director of Industrial Services position was substantially similar to his job at Stericycle.

This was Stericycle's first complaint. The Court will allow Stericycle an opportunity to cure these deficiencies. The Court notes that based on Stericycle's response to Carney's motion to stay non-party discovery, R. 46, 50, and other representations made in open court, it appears that Stericycle does have some support for its claims but is reluctant to include certain information in a publicly-filed complaint. Ultimately, Stericycle elected to bring this case in the public court

14

system and must bear the attendant costs, including public disclosure of some facts that it might like to keep private. (Stericycle could have included an arbitration clause in its employment agreements to allow for a private and confidential dispute resolution process; it did not do so.) Of course, there are still a variety of ways to draft a complaint that complies with Fed. R. Civ. P. 8(a), *Iqbal*, and *Twombly* without revealing proprietary business information.

Carney also asks the Court to declare the non-solicitation and non-competition covenants in the Stericycle Agreements unenforceable. Under Illinois law, "a restrictive covenant will be upheld if it contains a reasonable restraint and the agreement is supported by consideration." *Reliable Fire Equip. Co. v. Arredondo*, 965 N.E.2d 393, 396 (Ill. 2011). A restrictive covenant "is reasonable only if the covenant: (1) is no greater than is required for the protection of a legitimate business interest of the employer[]; (2) does not impose undue hardship on the employee[]; and (3) is not injurious to the public." *Id.*

Although the reasonableness of a restrictive covenant is ultimately a question of law for the Court to decide, *Cambridge Eng'g, Inc. v. Mercury Partners 90 BI, Inc.*, 879 N.E.2d 512, 522 (Ill. App. Ct. 2007), courts have been reluctant to make that determination on the face of a complaint. *See, e.g., Abbott-Interfast Corp. v. Harkabus*, 619 N.E.2d 1337, 1343 (Ill. App. Ct. 1993); *Instant Tech., LLC v. Defazio*, 2012 WL 2567033, at *6 (N.D. Ill. June 26, 2012). "[R]easonableness is not something that can be determined in the abstract. Rather, it necessarily depends on the unique facts and circumstances of each case." *Cambridge Eng'g*, 879 N.E.2d at

522. *See also Harkabus*, 619 N.E.2d at 1343 ("Although courts closely scrutinize noncompetition agreements, only in extreme cases will a court find such an agreement invalid on its face.") (citations omitted).

Here, the reasonableness of the restrictive covenants hinges on a variety of factual issues that the Court cannot meaningfully assess on the limited record currently before it. Those issues involve what the geographic restriction in the Stericycle Agreements really means, Stericycle's legitimate business interests, the hardship on Carney, and the exact nature of Carney's employment with PSC. All of these issues will benefit from some factual development (provided that Stericycle can adequately allege its underlying breach of contract claims).

## III.    Unjust Enrichment/Restitution

Count V of Stericycle's complaint is captioned "Unjust Enrichment / Restitution." Stericycle alleges that it granted Carney stock options as consideration for the restrictive covenants in the Stericycle Agreements, and that "[b]ecause of Carney's failure to adhere to his post-employment contractual obligations . . ., Carney has been unjustly enriched by his receipt and retention of such proceeds." Compl. ¶ 83.

Unjust enrichment "is based on a contract implied in law. . . . [W]here there is a specific contract which governs the relationship of the parties, the doctrine of unjust enrichment has no application." *People ex rel. Hartigan v. E & E Hauling, Inc.*, 607 N.E.2d 165, 177 (Ill. 1992) (quotations and citations omitted). A plaintiff therefore "may not include specific references to a governing contract in a count for

unjust enrichment." *Cooper v. Durham Sch. Servs.*, 2003 WL 22232833, at *7 (N.D. Ill. Sept. 22, 2003); *see also Team Impressions, Inc. v. Chromas Tech. Canada, Inc.*, 2003 WL 355647, at *4 (N.D. Ill. Feb. 18, 2003); *Vanguard Fin. Serv. Corp. v. R W Prof'l Leasing Servs. Corp.*, 1998 WL 774984, at *4 (N.D. Ill. Oct. 27, 1998).

In response to Carney's motion to dismiss, Stericycle concedes that it cannot state a claim for unjust enrichment where an express contract exists. Stericycle instead attempts to recast Count V as seeking restitution as a legal remedy for its breach of contract claims, citing *Mondry v. Am. Family Mut. Ins. Co.*, 557 F.3d 781, 806 (7th Cir. 2007). If that is Stericycle's theory, it is unclear if it belongs in a separate count. Restitution in that context would seemingly be a remedy for breach of contract, not an independent cause of action. *E.g., In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1017 (N.D. Ill. 2000). In any event, Count V as currently pled fails to state a claim. Stericycle may replead its restitution theory—without reference to unjust enrichment—in an amended complaint.

## Conclusion

For the foregoing reasons, Carney's Rule 12(b)(6) motion to dismiss, R. 14, is granted. Counts I and II are dismissed with prejudice. Counts III, IV, and V are dismissed without prejudice. Stericycle may file an amended complaint on or before August 2, 2013. Carney's Rule 12(b)(3) motion is denied as moot.

ENTERED:

_____
Honorable Thomas M. Durkin
United States District Judge

Dated:  July 12, 2013